# MILMAN LABUDA LAW GROUP PLLC
**3000 MARCUS AVENUE**
**SUITE 3W8**
**LAKE SUCCESS, NY 11042**
_____

**TELEPHONE (516) 328-8899**
**FACSIMILE (516) 328-0082**

August 21, 2020

**VIA ECF**
Hon. Margo K. Brodie, U.S.D.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Courtroom 6F North
Brooklyn, NY 11201-1804

      *Re*:    Soto v. Miss Laser Inc., *et al*.
             Case No.: 1:19-cv-4745 (MKB) (CLP)
             MLLG File No.: 159-2019_____

Dear Judge Brodie:

      This office represents Defendants in the above-referenced case. Defendants write to respectfully renew their request a pre-motion conference in anticipation of their motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (hereinafter referred to as "Rule") and ¶ 3(A) of this Court's Individual Practices and Rules (hereinafter referred to as "Practices"), and ask that Defendants' deadline to oppose Plaintiff's motion for conditional certification of a collective action be adjourned *sine die* pending same.

**Relevant Procedural History & Facts**

      On August 17, 2019, Plaintiff Michelle Caicedo Soto (hereinafter "Plaintiff" or "Soto") filed her complaint alleging causes of action under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") for alleged unpaid wages, overtime, spread of hours compensation, failure to provide meal periods, and various recordkeeping violations. The only causes of action giving rise to this Court's subject matter jurisdiction under 28 U.S.C. § 1331 are Plaintiff's first and third causes of action for alleged minimum wage and overtime violations.

      In her complaint, Plaintiff alleges that she was employed by Defendants as a "technician" at three (3) locations in Queens, New York from November 2016 through June 2019. See Docket Entry 1 at ¶ 7. She conclusorily alleges that Defendants are a business engaged in interstate commerce with gross sales exceeding $500,000.00 per year, and that Defendants purchased and handled goods moved in interstate commerce. Id. at ¶¶ 9-10. She alleges that from 2016 until 2019, she earned anywhere from $10.00 to $17.00 per hour. Id. at ¶¶ 30-33.

      Her complaint is barren as to what "goods" were purchased or handled, nor is there any elucidation of the duties she performed as a "technician." Further, while Plaintiff seeks both a class and collective action, both are not likely to be successful.

Defendants never employed more than approximately five (5) employees since they opened and there are no similarly situated employees to Soto. As such, Plaintiff would fail to satisfy the numerosity requirement under Rule 23 and would not otherwise be entitled to conditional certification of a collective action as she will be unable to meet her modest factual burden evidencing that she is similarly situated to the few other employees of Defendants.

**Defendants are entitled to judgment on the pleadings**

Under Rule 12(c), "[a]fter the pleadings are closed ... a party may move for judgment on the pleadings." See Fed. R. Civ. P. 12(c). Judgment on the pleadings is appropriate only where all material facts are undisputed and, "a judgment on the merits is possible merely by considering the contents of the pleadings." See Mennella v. Office of Court Admin., 938 F. Supp. 128, 131 (E.D.N.Y. 1996), aff'd, 164 F.3d 618 (2d Cir. 1998) (citing Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988)). However, a motion to dismiss for failure to state a claim that is styled as arising under Rule 12(b) but is filed after the close of pleadings should be construed by the district court as a motion for judgment on the pleadings under Rule 12(c). See Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001).

A court may also convert a motion for judgment on the pleadings into a motion for summary judgment if 'matters outside the pleadings are presented to and not excluded by the court.'" See Cleveland v. Caplaw Enterprises, 448 F.3d 518, 521 (2d Cir. 2006). In all other respects, a motion brought pursuant to Rule 12(c) is analyzed under the same standard applicable to a motion under Rule 12(b)(6). See Patel, 259 F.3d at 126; see also Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999).

      i.      The Complaint Fails to Properly Plead Enterprise or Individual Coverage

Here, Plaintiff fails to state a claim for relief under federal law because she has not and cannot establish neither enterprise nor individual coverage under the FLSA. The Defendants operate three (3) locally owned laser hair removal studios which cater solely to local residents of Queens, New York. Plaintiff does not allege that she engaged in any interstate commerce.

Courts routinely dismiss causes of action under the FLSA for failure to properly plead either enterprise coverage or individual coverage. See, e.g., Jones v. E. Brooklyn Servs. Corp., No. 11-CIV.-1021 (JG), 2012 WL 909830 (E.D.N.Y. Feb.28, 2012) (Gold., C.M.J.) (recommending the denial of a default judgment motion where the complaint contained "only conclusory statements about interstate commerce"), adopted, 2012 WL 909825 (E.D.N.Y. Mar.16, 2012) (Gleeson, J.); Day An Zhang v. L.G. Apparel, Inc., No. 09-CIV.-3240 (KAM), 2011 WL 900183 (E.D.N.Y. Feb.18, 2011) (Gold, C.M.J.) (recommending denial of default judgment motion where the complaint "allege[d] only in conclusory terms and without any factual support whatsoever that defendants [we]re enterprises subject to the requirements of the FLSA or that [the plaintiff was] individually covered under the FLSA."), adopted, 2011 WL 900950 (E.D.N.Y. Mar.15, 2011) (Matsumoto, J.).

Accordingly, Plaintiff's first and third causes of action under the FLSA must be dismissed for failure to state a claim.

ii. The Complaint Fails to Plead Any Minimum Wage Violation

During the relevant time period, the minimum wage under the FLSA has been $7.25 per hour. See 29 U.S.C. § 206(1)(C). The relevant minimum wage rates under the NYLL from 2016 through 2019 are set forth in the table below next to the amount Plaintiff alleges she earned.

| Year | Max[1] Minimum Wage | Plaintiff's Alleged Rate in Complaint |
|------|----------------------|----------------------------------------|
| 2016 | $9.00 | $10.00 |
| 2017 | $11.00 | $12.00 to $15.00 |
| 2018 | $13.00 | $15.00 |
| 2019 | $15.00 | $15.00 to $17.00 |

Though Plaintiff complains that she worked hours for which she was not paid (See Docket Entry 1 at ¶ 34), at her rate of pay, she was always paid at least the minimum wage even including any such hours, both under the federal law and as a miscellaneous industry employee under state law. See 29 CFR § 778.109 ("The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid"); see also 12 NYCRR § 142-2.16 ("the term regular rate shall mean the amount that the employee is regularly paid for each hour of work, and it provides further that when an employee is paid on a salary basis or any basis other than an hourly rate, the regular hourly wage rate shall be determined by dividing the total hours worked during the week into the employee's total earnings").

Here, there is no dispute that Plaintiff was always paid at least the minimum wage for all hours worked. Accordingly, Defendants respectfully submit they have sufficient basis for their anticipated motion and thank this Court for its time and attention to this case.

**Plaintiff is prosecuting this case in bad faith**

On or about August 27, 2019, Plaintiff submitted damages calculations purporting to total $178,417.81. The calculations were of a spreadsheet which was submitted in PDF format. When Defendants requested a copy of the calculations in Excel format to review the mathematical correctness of same, Plaintiff refused. Over the course of months, including letter motion practice over whether Plaintiff must provide their damage calculations in Excel format (which was denied on procedural grounds), Defendants sought to make sense of Plaintiff's calculations and could not do so. Defendants were, however, able to show mathematical inconsistencies in Plaintiff's spreadsheet.

Thus, on or about April 14, 2020, Plaintiff submitted revised damages calculations totaling $68,990.63, representing a difference of nearly $110,000.00. Defendants challenged these calculations, as well, and demanded that Plaintiff provide the Excel spreadsheet so that Defendants can see how Plaintiff is calculating these damages. Defendants also found further inconsistences.

---

[1] Beginning in 2017, the Minimum Wage Order for Miscellaneous Industries and Occupations distinguishes between "large" employers of eleven or more employees and "small" employers of ten or fewer employees. See https://www.labor.ny.gov/formsdocs/wp/CR142.pdf.

3

This led to Plaintiff yet again revising its damages calculations. On or about May 5, 2020, Plaintiff submitted further revised damages calculations totaling $39,273.32, nearly half of the earlier revised calculations. While these calculations were submitted in Excel format, Plaintiff removed all of the formulas and provided the spreadsheet with hardcoded numbers. Plaintiff did this as if there is some proprietary methodology to the math in figuring out overtime damages. Plaintiff's antics concerning the spreadsheets unnecessarily delayed this litigation and frustrated a resolution. Plaintiff did so despite being Ordered by Magistrate Judge Pollak to provide the calculations in Excel format. See Text Only Minute Entry and Order dated April 16, 2020 ("Plaintiff is to recalculate damages based on certain assumptions and provide the spreadsheets in excel format to defendant in furtherance of the settlement"). Defendants were able to avoid motion practice on this point by having Plaintiff provide the formulas they used verbatim such that Defendants had to physically replace the hardcoded numbers with the formulas in order to understand Plaintiff's math. Again, Plaintiff's conduct was unnecessary, done in bad faith, designed to frustrate and obfuscate, and it is worthy to note once more that their damage calculations which initially totaled $178,000.00 were deflated by Defendants' challenges to Plaintiff's math (not facts such as hours worked, time period employed, wage rates, etc.) to $37,273.32, a number that is a fifth of the original demand.

In any event, breaking down the $37,273.32 yields the following: (i) $12,653.17 in base alleged wage underpayment; (ii) $12,653.17 in liquidated damages; (iii) $10,000.00 in "notice" violations pursuant to NYLL § 195; and (iv) $3,966.98 in interest. This number is also incredibly inflated. Here is why.

There are only three (3) periods of time in between Plaintiff's period of employment from on or about November 13, 2016 through on or about June 14, 2019, a period of approximately 139 weeks, in which the Defendants do not have time records for Plaintiff's weekly hours worked. Those time periods are: (i) September 3, 2017 through December 9, 2017, totaling fourteen (14) weeks; (ii) January 20, 2018 through March 9, 2018, totaling seven (7) weeks; and (iii) April 14, 2018 through May 18, 20-18, totaling five (5) weeks. Therefore, out of 139 weeks, there are only twenty-six (26) weeks in which there are no time records for Plaintiff.

For these twenty-six (26) weeks, Plaintiff submits that her total hours worked for each of those weeks was 59.38 hours, and her base alleged wage underpayment damages total $5,615.00.[2] However, if you average the number of hours Plaintiff worked on a weekly basis for the 113 weeks Defendants do have records for, Plaintiff only worked an average of 39.43 hours per week. As such, Plaintiff did not even regularly work overtime, and more importantly, when applying that average 39.43 hours per week to those twenty-six (26) overinflated weeks, the total damages decrease[3] to $3,584.31 in base wage underpayment, plus $3,584.31 in liquidated damages.

---

[2] For some inexplicable reason, Plaintiff's daily damages total $116.30 per day during the first period, $348.90 per day during the second, and $308.90 per day during the third. Plaintiff's numbers simply make no sense.

[3] Defendants do not concede any of these numbers are accurate, but are working with them for settlement purposes with Plaintiff to reach some logical basis upon which the parties can settle.

4

Against this backdrop, Defendants offered Plaintiff $14,000.00 in settlement – a number far above her actual damages, and have agreed to resolve the attorneys' fees owed to her counsel through motion practice. However, Plaintiff has refused. What's worse, Plaintiff has ignored Magistrate Judge Pollak's Order to notify the Court as to their settlement position given Defendants' beyond reasonable offer. See Text Only Order dated June 18, 2020 ("Plaintiff's counsel to notify court by 6/19/2020 as to settlement position").

Instead, Plaintiff plows on with unnecessary litigation to conditionally certify a collective action it has no basis for. Indeed, Plaintiff is not similarly situated to other employees because she was a faithless servant who stole Defendants' customers and performed services for Defendants' customers privately in her home. Because Plaintiff violated her duty of loyalty[4] towards Defendants, not only will her motion to conditionally certify a collective action be denied, she will be disgorged of all wages paid to her from the first date of her disloyalty.[5] See Duane Jones Co. v. Burke, 306 N.Y. 172 (1954); see also Lamdin v. Broadway Surface Advertising Corp., 272 N.Y. 133 (1936); Luskin v. Seoane, 226 A.D.2d 1144 (N.Y. App. Div. 4th Dept. 1996).

In any event, Defendants' anticipated motion would be dispositive of Plaintiff's motion and thus must be decided first, especially because Defendants earlier sought this relief and it was denied without prejudice due to settlement discussions. See Text Only Order dated April 24, 2020.

This Court must put a stop to Plaintiff and her counsel. This case does not belong in federal court. Plaintiff should either settle her claim and move on or be compelled to oppose Defendants' motion to dismiss and then defend herself in the state court action your undersigned been authorized to file against her should this case proceed. She is not similarly situated to any other employees because she is a thief.

As for her counsel, Defendants remind this Court that Plaintiff's firm has been the subject of several recent Orders sanctioning them for engaging in the aforementioned conduct which amounts to vexatious litigation. In considering this motion, the Court should also take into account these instances in which Plaintiff's counsel has been sanctioned.

---

[4] Pursuant to this duty, the employee is prohibited from acting in any manner inconsistent with his or her agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his or her duties. See Qosina Corp. v C & N Packaging, Inc., 96 A.D.3d 1032 (2d Dept. 2012) (citing PJI 3:59); see also Mega Group Inc. v. Halton, 290 A.D.2d 673 (3d Dept. 2002); CBS Corp. v. Dumsday, 268 A.D.2d 350 (1st Dept. 2000). "An employee owes his or her employer 'undivided and unqualified loyalty and may not act in any manner contrary to the interests of the employer'" See Qosina Corp. v. C & N Packaging, Inc., 96 A.D.3d 1032 (2d Dept. 2012) (citing Restatement [Third] of Agency §§ 8.01, 8.03).

[5] New York's strict application of the faithless servant doctrine "mandates the forfeiture of all compensation […] where […] one who owes a duty of fidelity to a principal is faithless in the performance of his services." See Art Capital Group, LLC v Rose, 2017 N.Y. App. Div. LEXIS 2670 (N.Y. App. Div. 1st Dep't 2017) (citations omitted); see also Phansalkar v. Andersen Weinroth & Co., L.P., 344 F.3d 184, 200, 203 (2d Cir. 2003) (requiring disgorgement of over $4 million dollars in compensation for violation of the faithless servant doctrine).

5

Most notably, Plaintiff's counsel has been sanctioned at least three (3) times <u>in 2019 alone</u>.

<u>First</u>, on March 31, 2019, Magistrate Judge Locke issued a decision sanctioning Plaintiff's counsel pursuant to 28 U.S.C. § 1927 and the court's inherent power. See <u>Junjiang Ji v. Jling Inc.</u>, 2019 U.S. Dist. LEXIS 55341, *37-41, 2019 WL 1441130 (E.D.N.Y. Mar. 31, 2019). There, Judge Locke held that Plaintiff's counsel's arrival at trial unprepared to proceed was in bad faith for various reasons. Most importantly, the plaintiffs in that case, through their counsel, violated Chinese law for conducting a remote deposition and deceived the Court in that case into believing that the witness lawfully testified, requiring the court to end his testimony at trial. Accordingly, the court sanctioned Plaintiff's counsel and awarded Defendants' attorneys' fees associated with their preparation for their appearances at trial and preparation of the sanctions motion.

<u>Second</u>, on April 5, 2019, District Judge Furman sanctioned Plaintiff's counsel pursuant to Rule 16(f) and the court's inherent authority for its disregard for clear and unambiguous court orders. See <u>Jianshe Guo v. A Canaan Sushi, Inc.</u>, 2019 U.S. Dist. LEXIS 59234, *10-12, 2019 WL 1507900 (S.D.N.Y. April 5, 2019). In issuing his decision, Judge Furman noted that Plaintiff's counsel repeatedly failed to comply with court deadlines despite extensive experience with the court. Moreover, such failures caused the court and its staff to expend resources reminding counsel of its need to adhere to deadlines. Additionally, the court wasted "considerable time" reviewing the plaintiff's default judgment motion which was so patently defective that it "could grant Plaintiff no relief." Even worse, since Plaintiff's counsel failed to file a revised motion, all of the Court's efforts explaining the defects in the motion were wasted.

Thus, for their repeated and "delinquent conduct," Judge Furman sanctioned Plaintiff's counsel and his staff members with a fine of $2,000.00 payable to the Clerk of the Court, which it stated was a "relatively modest sanction" in order to secure compliance with future Orders and deadlines. In concluding remarks in his decision, Judge Furman stated that future disregard of court orders (in this case or others) "may result in additional, harsher sanctions, including but not limited to possible referral of counsel to the Court's Grievance Committee." <u>Id.</u>

<u>Third</u>, in <u>Jianjun Chen v. 2425 Broadway Chao Rest., LLC</u>, No. 1:16-CV-5735-GHW, 2019 WL 2250336, Judge Woods Ordered Plaintiff's counsel to pay 50% of the reasonable fees and costs associated with their motion for summary judgment and 100% of their reasonable fees and costs associated with their subsequent motion for sanctions pursuant to Rule 26(g) (approximately $50,000.00) because Plaintiff's counsel still pursued a case on the theory that Plaintiffs were improperly paid during a certain time period despite ultimately admitting that all Plaintiffs were properly paid during that period and adducing no evidence that any Plaintiff was improperly paid during that period. During a hearing on that motion, Judge Woods issued a stern warning to Plaintiff's counsel as follows:

> Now the Troy Law Firm is a repeat player in FLSA litigation in this district as well as the Eastern District of New York. Were the type of litigation strategy displayed in this case demonstrated to be a part of a pattern of behavior of Troy Law, that may impact the outcome of the potential future sanctions for the lawyers present or the Troy Law Firm as a whole.

<u>See</u> copy of transcript from hearing annexed hereto as **Exhibit "A"** at 28:20-29:1 with the cited portion highlighted.

  Here, Defendants respectfully submit that there is no excuse for Plaintiff's conduct in handling this case. Further, based on their prior conduct, it is readily apparent that Plaintiff and her counsel are seeking to exact a sum of money from Defendants by attrition in forcing them to incur attorneys' fees unnecessarily due to their abject failure to follow the Rules.

  Based on the recent myriad sanctions issued against Plaintiff's counsel, such behavior is a pattern and practice at this firm. This Court should consider Plaintiff's counsel's conduct[6] in determining Defendants' renewed letter motion for a pre-motion conference, extension of time *sine die* to oppose Plaintiff's motion to conditionally certify a collective action in this case.

  Defendants thank this honorable Court for its time and attention to this case.

Dated: Lake Success, New York
   August 21, 2020        Respectfully submitted,

                   **MILMAN LABUDA LAW GROUP PLLC**
                   _____/s_____
                   Emanuel Kataev, Esq.
                   3000 Marcus Avenue, Suite 3W8
                   Lake Success, NY 11042-1073
                   (516) 328-8899 (office)
                   (516) 303-1395 (direct dial)
                   (516) 328-0082 (facsimile)
                   emanuel@mllaborlaw.com

                   *Attorneys for Defendants*

cc: Plaintiff (via ECF).

---

[6] Defendants recognize that this Court's Practices set forth a three (3) page limit on such pre-motion letters. <u>See</u> Practices ¶ 3(A). Defendants respectfully seek leave *nunc pro tunc* to file excess pages. Defendants submit that good cause exists for same because the instant letter motion seeks two (2) distinct forms of relief: (i) a renewed letter motion for a pre-motion conference concerning Defendants' motion to dismiss; and (ii) an extension of time *sine die* to oppose Plaintiff's motion to conditionally certify a collective action. Further, Defendants respectfully submit that additional good cause exists because your undersigned wished to outline their prodigious efforts to resolve this case rather than engage in further protracted litigation. <u>See</u> Fed. R. Civ. P. 1 (requiring the parties and the Court to construe, administer, and employ the Rules to secure the just, speedy, and inexpensive determination of every action and proceeding). It was in this spirit Defendants submitted the instant lengthy letter motion.

7