UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
MICHELLE CAICEDO SOTO, *on her own behalf and on behalf of others similarly situated*,

                        Plaintiff,

                        v.

MISS LASER INC. *d/b/a Miss Laser*, FRIDA KOYUNOV, EMANUEL ARABOV, and JOSEF YUNAEV,

                        Defendants.
-----------------------------------------------------------------

**MEMORANDUM & ORDER**
19-CV-4745 (MKB)

MARGO K. BRODIE, United States District Judge:

      Plaintiff Michelle Caicedo Soto commenced the above-captioned action on August 17, 2019, against Defendants Miss Laser Inc., doing business as Miss Laser ("Miss Laser"), Frida Koyunov, Emanuel Arabov, and Josef Yunaev alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, 206, 207(a)(1), and 215(a) ("FLSA"), New York Labor Law §§ 162, 190 *et seq.*, and 650 *et seq.* ("NYLL"), and New York Codes, Rules and Regulations § 146 ("NYCRR").  (Compl., Docket Entry No. 1.)  Plaintiff alleges that Defendants failed to pay her in full, maintain payroll records, and provide for meal periods during her employment at Miss Laser.  (*Id.* ¶¶ 4, 80, 86, 90.)  On October 21, 2019, Defendants filed an Answer and on October 22, 2019, an Amended Answer.  (Answer, Docket Entry No. 8; Am. Answer, Docket Entry No. 11.)  On August 24, 2020, Miss Laser filed an action against Plaintiff in New York Supreme Court, Queens County, alleging breach of contract claims pursuant to the faithless servant

doctrine and on December 9, 2020, Plaintiff moved to amend the Complaint to add FLSA and NYLL retaliation claims and Defendants opposed the motion.[1]

For the reasons explained below, the Court grants Plaintiff's motion to amend[2] the Complaint to add FLSA and NYLL retaliation claims.

## I. Background

Miss Laser is a New York-based corporation that purchases and handles goods that move in interstate commerce. (Compl. ¶¶ 9–10.) The corporation has three locations in New York and "has gross sales in excess of five hundred thousand dollars . . . per year." (*Id.* ¶¶ 9, 23.) "The [i]ndividual [d]efendants are officers, directors, managers and/or majority shareholders or owners" of Miss Laser. (*Id.* ¶ 11.) Koyunov, Arabov, and Yunaev (1) "had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at" Miss Laser. (*Id.* ¶¶ 11, 16, 20.) Koyunov, Arabov, and Yunaev paid Plaintiff and

---

[1] (Pl.'s Mot. to Suppl. the Compl. ("Pl.'s Mot."), Docket Entry No. 32; Pl.'s Mem. in Supp. of Pl.'s Mot. ("Pl.'s Mem.") 4, Docket Entry No. 34; Pl.'s Reply in Supp. of Pl.'s Mot. ("Pl.'s Reply"), Docket Entry No. 37; Defs.' Opp'n to Pl.'s Mot. ("Defs.' Opp'n") 2, Docket Entry No. 38.)

[2] The parties' briefing papers use the phrases "leave to amend" and "leave to supplement" interchangeably. (*See* Pl.'s Mot. 8; Pl.'s Reply 6; Defs.' Opp'n 2, 10.) "The standard for a motion to supplement under [Rule 15(d) of the Federal Rules of Civil Procedure] is the same as for a motion to amend the pleadings under [Rule 15(a) of the Federal Rules of Civil Procedure]." *Orr v. McGinty*, No. 17-CV-1280, 2021 WL 781161, at *2 n.1 (N.D.N.Y. Mar. 1, 2021) (citing *Klos v. Haskell*, 835 F. Supp. 710, 715 (W.D.N.Y. 1993), *aff'd*, 48 F.3d 81 (2d Cir. 1995)); *see also Kannuu Pty Ltd. v. Samsung Elecs. Co.*, No. 19-CV-4297, 2021 WL 195163, at *6 (S.D.N.Y. Jan. 19, 2021) ("Where the plaintiff seeks to add related claims against the same defendants, the analysis used to determine whether supplementation is appropriate under Rule 15(d) is identical to the analysis used to determine whether amendment is appropriate pursuant to Rule 15(a)." (quoting *Kleeberg v. Eber*, 331 F.R.D. 302, 315 (S.D.N.Y. 2019))). Thus, the Court construes Plaintiff's claims as a motion to amend pursuant to Rule 15(a).

other employees at Miss Laser, (*id.* ¶¶ 18, 21), and Koyunov hired and fired Plaintiff, (*id.* ¶¶ 13–14).

"From on or about November 10, 2016 to June 12, 2019, Plaintiff . . . was employed by Defendants to work as a technician at" two of Miss Laser's locations. (*Id.* ¶ 26.) During that time period, Plaintiff's regular work schedule was as follows: Plaintiff worked from between 9:45 AM and 10 AM to 7:30 PM on Mondays through Fridays, and from between 9:45 AM and 10 AM to 5 PM on Sundays. (*Id.* ¶ 27.) "Every five . . . weeks, Plaintiff would work five . . . days instead, with two" days off. (*Id.* ¶ 28.) Plaintiff "did not have a fixed time for lunch or dinner." (*Id.* ¶ 29.)

Defendants promised Plaintiff's salary and commission as follows: an hourly rate of ten dollars plus commission between November 10, 2016 to December 31, 2016, an hourly rate of twelve dollars plus commission between January 1, 2017 to May 31, 2017, an hourly rate of fifteen dollars plus commission between June 1, 2017 to March 23, 2019, and an hourly rate of seventeen dollars plus commission between April 7, 2019 to June 15, 2019. (*Id.* ¶¶ 30–33.)

Although Plaintiff's work before 10 AM and after 7 PM was considered overtime and Plaintiff regularly worked overtime, Plaintiff "was not paid at the [one and one-half] times (1.5x) the regular rate for overtime work" and "was never informed of her hourly pay rate or any tip deductions toward the minimum wage." (*Id.* ¶¶ 37–39, 41.) Rather than being "paid for all hours worked," Plaintiff was paid for sixty hours biweekly. (*Id.* ¶¶ 34–35.) Thus, Plaintiff "was not paid for around [forty-five] . . . minutes of work each day, and is also owed the half-rate for each hour worked in excess of forty . . . in a given workweek." (*Id.* ¶ 37.) Plaintiff was also "not compensated for New York's 'spread of hours' premium for shifts that lasted longer than ten . . . hours at her promised rate." (*Id.* ¶ 42.)

During her employment at Miss Laser, Plaintiff was not provided with a statement detailing "her weekly payment reflecting [her] name, employer's name, employer's address and telephone number, [her] rate or rates of pay, any deductions made from [her] wages, any allowances claimed as part of the minimum wage, and [her] gross and net wages for each pay day in Spanish," which is Plaintiff's native language.  (*Id.* ¶ 40.)

Plaintiff alleges that due to Defendants' "policy and practice of refusing to pay Plaintiff in full, and the similarly situated collective action [and class action] members, for some or all of the hours they worked," failure to provide meal periods, failure to preserve Plaintiff's weekly payroll records, and failure to provide written notice of pay rates and wage statements, Defendants violated FLSA, 29 U.S.C. §§ 201, 206, 207(a)(1), and 215(a), NYLL §§ 162, 190 *et seq.*, and 650 *et seq.*, and NYCRR § 146.  (*Id.* ¶¶ 53–96.)

Plaintiff commenced this action on August 17, 2019, individually and as class representative on behalf of all other and former non-exempt employees of Miss Laser employed "for up to the last three . . . years, through entry of judgment . . . and whom were not compensated at their promised hourly rate for all hours worked and at [one-and-one-half] times their promised work for all hours worked in excess of forty . . . hours per week." (*Id.* ¶ 43.) Plaintiff also brings her NYLL claims pursuant to Rule 23 of the Federal Rules of Civil Procedure "on behalf of all non-exempt personnel employed by Defendants on or after the date that is six years before the filing of the Complaint." (*Id.* ¶ 44.)  Plaintiff alleges that the number of members of the class and their identities "are readily ascertainable" from Defendants' records, that notice can be adequately provided, and that the numerosity, commonality, typicality, adequacy, and superiority required to certify a class action exist. (*Id.* ¶¶ 46–52.)  Thus, Plaintiff

4

seeks collective and class action certification, actual and punitive damages, and attorneys' fees and costs on her claims. (*Id.* at 18–20.)

On October 21, 2019, Defendants filed an Answer and filed an Amended Answer on October 22, 2019. (Answer; Am. Answer.) On August 21, 2020, Plaintiff filed a motion for collective class certification,[3] (Pl.'s Mot. for Collective Class Certification, Docket Entry No. 26), and on August 24, 2020, Miss Laser filed an action against Plaintiff in the Supreme Court of Queens County, New York, alleging claims for breach of contract under the faithless servant doctrine (the "State Court Action"), (Pl.'s Mem. 4; Defs.' Opp'n 1). On December 9, 2020, Plaintiff sought leave to amend the Complaint to add FLSA and NYLL retaliation claims, alleging that the State Court Action was filed in retaliation for her commencement of this action, (Pl.'s Mot.; Pl.'s Mem. 4; Pl.'s Reply), and Defendants opposed, (Defs.' Opp'n).

**II. Discussion**

    **a. Standard of review**

Rule 15 of the Federal Rules of Civil Procedure provides that "[l]eave to amend should be 'freely give[n] . . . when justice so requires,' but 'should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party[.]'" *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) (second and third alterations in original) (first quoting Fed. R. Civ. P. 15(a)(2); and then quoting *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008)); *see also Kainz v. Bernstein*, --- F. App'x ---, ---, 2020 WL 7488199, at *3 (2d Cir. Dec. 21, 2020) (noting that leave to amend should be freely

---

[3] The parties have only partially briefed Plaintiff's motion to certify a collective action. (Order dated Feb. 19, 2021; Order dated Oct. 9, 2020.)

5

given). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Jang v. Trs. of St. Johnsbury Acad.*, 771 F. App'x 86, 88 (2d Cir. 2019) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)); *see also Chunn v. Amtrak*, 916 F.3d 204, 208 (2d Cir. 2019) ("[An] [a]mendment is futile if it fails 'to cure prior deficiencies.'" (citing *Panther Partners Inc.*, 681 F.3d at 119)). "Thus, the standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss." *IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015). "If the problems with a claim are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to replead would be 'futile' and 'should be denied.'" *Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 510 (S.D.N.Y. 2005) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

b. **Plaintiff can amend the Complaint to plead FLSA and NYLL retaliation claims**

Plaintiff argues that she has sufficiently pled FLSA and NYLL retaliation claims because she engaged in protected activity when she commenced this action in August of 2019, the State Court Action serves as an adverse employment action, and the timing of the State Court Action shows causation. (Pl.'s Reply 3–4 (citing Defs.' Opp'n 2).)

Defendants argue that Plaintiff's motion to amend the Complaint is futile because the "proposed amended pleadings make no allegations that Defendants subjected Plaintiff to any adverse employment action or that they in anyway negatively affected her professional reputation" and because Plaintiff cannot show causation. (Defs.' Opp'n 4.)

6

FLSA makes it "unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [FLSA]." 29 U.S.C. § 215(a)(3). "FLSA retaliation claims are analyzed under [a] three-step burden-shifting analysis." *Velazquez v. Yoh Servs., LLC*, 803 F. App'x 515, 517 (2d Cir. 2020) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973)). A plaintiff alleging retaliation under FLSA must "establish a *prima facie* case of retaliation by showing: '(1) participation in protected activity known to the defendant, [such as] the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action.'" *Velazquez*, 803 F. App'x at 517 (alteration in original) (quoting *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010)). "If the plaintiff establishes a *prima facie* case of FLSA retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the employment action." *Id.* (citing *Mullins*, 626 F.3d at 53). "If the defendant does so, the plaintiff must then produce sufficient evidence to permit a reasonable juror to find that the defendant's proffered explanation was pretextual, and that more likely than not, retaliation was the real reason for the employment action." *Id.* at 53–54 (citing *Mullins*, 626 F.3d at 53–54).

Similar to FLSA, the NYLL makes it unlawful for an employer to "discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee . . . because such employee has made a complaint . . . that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates [the NYLL]." NYLL § 215(a)(1). "The burden-shifting standard for a retaliation claim under the NYLL is the same as that under the FLSA." *Rodriguez v. Nat'l Golf Links of Am.*, No. 19-CV-7052, 2020 WL 3051559, at *2 (E.D.N.Y. June 8, 2020) (citing *Santi v. Hot in Here, Inc.*, No. 18-CV-3028, 2019 WL 290145, at *4 (S.D.N.Y.

7

Jan. 22, 2019) (noting that FLSA and NYLL retaliation claims are governed by the same standard)).

Defendants do not dispute that Plaintiff engaged in protected activity when she commenced this lawsuit, and, as discussed below, Plaintiff has shown that she suffered an adverse employment action when Defendants commenced the State Court Action against her shortly after she filed a motion for collective action certification, thereby establishing causation. *See id.* (noting that the plaintiff sufficiently pled participation in a protected activity because she filed a lawsuit against the defendants); *Calderon v. Mullarkey Realty, LLC*, No. 14-CV-2616, 2018 WL 2871834, at *16 (E.D.N.Y. June 10, 2018) (same).

### i. Adverse action

Plaintiff asserts that pursuant to *Rodriguez v. National Golf Links of America*, she has sufficiently alleged her FLSA and NYLL retaliation claims because the State Court Action is an adverse employment action. (Pl.'s Reply 3 (quoting *Rodriguez*, 2020 WL 3051559, at *7).) In support, Plaintiff argues that the State Court Action is meritless and that Defendants concede that "they would not have brought their action against Plaintiff but for her instituting this action and refusing settlement offers, necessitating discovery." (*Id.* at 5 (citing Defs.' Opp'n 2).)

Defendants assert that "there is no rational basis to conclude that a lawsuit for Plaintiff's thieving tactics that were discovered in the course of defending against her claims in this case over a year after she was terminated and virtually one year after she filed suit constitutes retaliation" and that pursuant to *Pawlowski v. Kitchen Expressions, Inc.*, the Court should decline Plaintiff's motion to add FLSA and NYLL retaliation claims. (Defs.' Opp'n 6 (citing *Pawlowski v. Kitchen Expressions Inc.*, No. 17-CV-2943, 2017 WL 10259773, at *1 (E.D.N.Y. Dec. 15, 2017)).)

8

"[A]dverse employment actions are those that 'well might . . . dissuade[] a reasonable worker from making or supporting a charge'" in the future. *Cox v. Onondaga Cnty. Sheriff's Dep't*, 760 F.3d 139, 145–46 (2d Cir. 2014) (alteration in original) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)); *see also Porter v. MooreGroup Corp.*, No. 17-CV-7405, 2020 WL 32434, at *11 (E.D.N.Y. Jan. 2, 2020) (finding that defendant-employer's use of "fake [Internal Revenue Service] agents to approach their litigation adversaries at their homes [was] sufficient to state a [FLSA] retaliation claim"). Even an employer's conduct after the employee's termination can support the former employee's retaliation claim. *See Romero v. Bestcare, Inc.*, No. 15-CV-7397, 2018 WL 1702001, at *4 (E.D.N.Y. Feb. 28, 2018) (concluding that the NYLL retaliation claim was "not futile solely because her employment with defendants ended before the alleged retaliatory action"), *report and recommendation adopted*, 2018 WL 1701948 (E.D.N.Y. Mar. 31, 2018); *Kreinik v. Showbran Photo, Inc.*, No. 02-CV-1172, 2003 WL 22339268, at *9 (S.D.N.Y. Oct. 14, 2003) (noting that although the defendant filed the counterclaims after the plaintiff's termination, it constituted sufficient adverse employment action because "counterclaims asserted against [the plaintiff] could harm his reputation in his industry and negatively affect his prospective employment or business opportunities").

Although the Second Circuit has not clarified whether "a meritorious lawsuit could constitute an adverse employment action for the purposes of a former employee's FLSA retaliation claim," *Rodriguez*, 2020 WL 3051559, at *5, district courts in this circuit have ruled that "[b]ad faith or groundless counterclaims and other legal proceedings against employees who assert statutory rights are actionable retaliation precisely because of their *in terrorem* effect," *Alvarado v. GC Dealer Servs. Inc.*, --- F. Supp. 3d ---, ---, 2021 WL 66541, at *26 (E.D.N.Y.

9

Jan. 6, 2021) (quoting *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 473 (S.D.N.Y. 2008)); *see also Nunez v. Metro. Learning Inst., Inc.*, No. 18-CV-1757, 2019 WL 5457731, at *1 (E.D.N.Y. Oct. 24, 2019) (noting that "the filing of a baseless lawsuit can be an adverse action" within the meaning of FLSA retaliation (citing *Romero*, 2018 WL 1702001, at *5)).

Some district courts in this circuit have determined that a lawsuit or counterclaim can only constitute an adverse action if it is baseless. *See Khalid v. DJ Shirley 1 Inc.*, No. 15-CV-5926, 2019 WL 325127, at *2 (E.D.N.Y. Jan. 25, 2019) (denying motion to amend complaint as premature where the plaintiffs did not allege "that the subject state court actions have been dismissed as baseless" (citing *Pawlowski*, 2017 WL 10259773, at *7–9)), *report and recommendation adopted*, 2019 WL 885931 (E.D.N.Y. Feb. 21, 2019); *Pawlowski*, 2017 WL 10259773, at *1. In *Pawlowski*, a plaintiff alleged violations of FLSA and NYLL based on the defendant's failure to pay overtime, and the defendant asserted a counterclaim under the faithless servant doctrine based on the plaintiff having performed freelance work. *See* 2017 WL 10259773, at *1. The court relied on *Bill Johnson's Restaurants v. NLRB*, 61 U.S. 731, 740 (1983) to conclude that the counterclaim was not baseless and thus did not qualify as an adverse employment action necessary to sustain the plaintiff's retaliation claims. *Id.* at *5; *see also Bill Johnson's Restaurants*, 61 U.S. at 741 (holding that the National Labor Relations Board could halt an allegedly retaliatory state-court lawsuit only if the suit lacked a reasonable basis in fact or law).

However, at least one district court in this circuit has allowed retaliation claims to proceed based on the filing of a potentially meritorious lawsuit. *See Rodriguez*, 2020 WL 3051559, at *7. In *Rodriguez*, a plaintiff sought to amend his complaint to add FLSA and NYLL retaliation claims, alleging that a state court lawsuit filed against him constituted a retaliatory

10

action. *Id.* at *2. The court "decline[d] to extend the reasoning in *Bill Johnson's* and *Pawlowski* to bar Plaintiff from adding retaliation claims under the FLSA and NYLL." *Id.* at *5. In reaching its decision, the court "emphasize[d] that the law on this issue is not settled" and that "whether 'an employee can claim retaliation because he or she has been sued in a well-founded lawsuit is an open question,'" *id.* (quoting *Lawrence v. NYC Med. Prac., P.C.*, No. 18-CV-8649, 2019 WL 4194576, at *1 (S.D.N.Y. Sept. 3, 2019)), and concluded that a meritorious lawsuit commenced with a retaliatory motive may constitute adverse action, *id.* (citing *Romero*, 2018 WL 1702001, at *6); *see also Romero*, 2018 WL 1702001, at *6 (concluding that the plaintiff should be afforded discovery where the proposed amended complaint stated that the defendants' purpose for filing the counterclaim was to retaliate and the allegation "can be reasonably interpreted as a complaint that the [c]ounterclaim is baseless *or* would not have been pursued absent a retaliatory motive" (emphasis added) (alteration in original)), *report and recommendation adopted*, 2018 WL 1701948 (E.D.N.Y. Mar. 31, 2018).

Although Plaintiff's employment ended prior to the filing of the complaint in the State Court Action, Defendants' action can nevertheless form the basis of Plaintiff's retaliation claim. *See Ozawa v. Orsini Design Assocs., Inc.*, No. 13-CV-1282, 2015 WL 1055902, at *9–10 (S.D.N.Y. Mar. 11, 2015) (noting that although the counterclaims were filed after the employee's employment had ended, "an employer need not necessarily take an action directly related to a person's employment" to be liable for FLSA retaliation (citing *Lore v. City of Syracuse*, 670 F.3d 127, 163 (2d Cir. 2012))). In addition, given the lack of Second Circuit precedent as to whether a meritorious action can be considered an adverse action, and based on the reasoning in *Rodriguez*, the Court declines to find as a matter of law that the State Court Action, which has not yet been shown to be meritorious, does not constitute an adverse action. *See Lawrence*, 2019

11

WL 4194576, at *9 (noting that whether "an employee can claim retaliation because he or she has been sued in a well-founded lawsuit is an open question" in the Second Circuit (quoting *Marchiano v. Berlamino*, No. 10-CV-7819, 2012 WL 4215767, at *6 (S.D.N.Y. Sept. 20, 2012))); *Delville v. Firmenich Inc.*, 920 F. Supp. 2d 446, 465 (S.D.N.Y. 2013) (stating that if an employer's claim has merit, it is unclear if it "can amount to retaliation as a matter of law"). Moreover, Plaintiff alleges that the State Court Action lacks merit, (Pl.'s Reply 4), and, accepting Plaintiff's allegations as true, as the Court must on a motion to amend,[4] the Court finds that Plaintiff has sufficiently alleged that the filing of the State Court Action is an adverse action.

### ii. Causal connection

Plaintiff asserts that she has alleged causation between the instant action and the State Court Action because Defendants initiated the State Court Action three days after she filed her motion for conditional collective certification and Defendants would not have brought the State Court Action but for her refusal to abandon the case. (Pl.'s Reply 4.) In support, Plaintiff argues that "[w]hile Defendants' complaint against Plaintiff [in the State Court Action] followed her complaint against them by about one year [compared to] the three months in *Rodriguez*, it followed her motion for conditional collective certification in this matter by a mere three days." (*Id.* at 4–5.) Plaintiff cites *Torres* for the proposition that the State Court Action "was precisely calculated to generate an in terrorem effect against potential opt-ins." (*Id.* at 5 (citing *Torres*, 628 F. Supp. 2d at 473).)

---

[4] *See Baldwin ex rel. Baldwin v. United States*, No. 20-CV-214, 2021 WL 431145, at *4 (N.D.N.Y. Feb. 8, 2021) (noting that on a motion to amend, courts must "consider the proposed amendments along with the remainder of the complaint, accept as true all non-conclusory factual allegations therein, and draw all reasonable inferences in plaintiff's favor" (quoting *Panther Partners Inc. v. Ikanos Comm'cns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012))).

Defendants argue that Plaintiff's motion to amend the Complaint is futile as Plaintiff cannot show causation because "her employment relationship ended in June [of] 2019 and the alleged retaliatory act — the commencement of the State Court Action — occurred in August [of] 2020, over a year later." (Defs.' Opp'n 4.)

To state a claim for FLSA retaliation, a plaintiff must also allege "a causal connection between the protected activity and the adverse employment action." *Mullins*, 626 F.3d at 53; *see also Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (affirming the dismissal of the plaintiff's retaliation claim where the plaintiff failed to allege facts that could support an inference of a causal connection). "A causal connection may be established by temporal proximity[] but can also be established through evidence of retaliatory intent." *Nunez*, 2019 WL 5457731, at *2 (first citing *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d. Cir. 2000); and then citing *Johnson v. Palma*, 931 F.2d 203, 207 (2d Cir. 1991)). The Second circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship." *Sirois v. Long Island R.R. Co.*, 797 F. App'x 56, 60 (2d Cir. 2020) (quoting *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001)). However, "a time period exceeding one year without additional evidence has been consistently held to be insufficient to establish a causal connection." *Johnson v. City of New York*, No. 17-CV-7585, 2019 WL 4468442, at *11 (E.D.N.Y. Sept. 18, 2019) (citing cases); *see also Riddle v. Citigroup*, 640 F. App'x 77, 79 (2d Cir. 2016) (concluding that a "gap of some sixteen months is too long to support a retaliation claim based solely on temporal connection"); *Morisseau v. DLA Piper*, 532 F. Supp. 2d 595, 617 (S.D.N.Y. 2008) ("While the Second Circuit has not 'drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship, the weight of authority supports

13

the view that ten or twelve months is too long.'" (footnoted omitted) (collecting cases), *aff'd*, 355 F. App'x 487 (2d Cir. 2009); *Nunez*, 2019 WL 5457731, at *2 (concluding that "four months elapsed between the filing of th[e] [federal] lawsuit and the filing of the state lawsuit" was "not too attenuated to find temporal proximity"); *Santana v. Rent A Throne, Inc.*, No. 15-CV-2563, 2018 WL 1027667, at *8 (E.D.N.Y. Feb. 21, 2018) (finding a five-month gap sufficient at the summary judgment stage).

"[I]n addition to the temporal proximity between a protected activity and the adverse employment action, a plaintiff can plausibly plead a causal connection by showing 'other actions in that time frame that suggest[] a retaliatory motive by defendants.'" *Salazar v. Bowne Realty Assocs., L.L.C.*, 796 F. Supp. 2d 378, 385 (E.D.N.Y. 2011) (second alteration in original) (quoting *Hemans v. Long Island Jewish Med. Ctr.*, No. 10-CV-1158, 2010 WL 4386692, at *10 (E.D.N.Y. Oct. 28, 2010)); *see also Cabrera v. CBS Corp.*, No. 17-CV-6011, 2018 WL 1225260, at *9 (S.D.N.Y. Feb. 26, 2018) (noting that a court may infer causation where temporal attenuation is "paired with other evidence" (citing *Salazar*, 796 F. Supp. 2d at 385)); *Torres*, 628 F. Supp. 2d at 474 ("The fact that [the corporate defendant] had almost an entire year to raise its counterclaims, but chose to do so only three weeks after [the plaintiffs] amended their complaint to allege wrongdoing by top-level corporate executives, strongly suggests an impermissible retaliatory motive."). In *Torres*, the corporate defendant interposed counterclaims twenty-eight days after the plaintiffs "amended their complaint to state overtime claims for the first time directly against" individual defendants who were connected to the corporate defendant. *Torres*, 628 F. Supp. 2d at 473–74. Although the complaint was filed about a year prior, the court inferred temporal proximity and noted that "[t]he fact that [the corporate defendant] had almost an entire year to raise its counterclaims, but chose to do so only three weeks after [the plaintiffs]

14

amended their complaint to allege wrongdoing by top-level corporate executives, strongly suggests an impermissible retaliatory motive." *Id.* The court also stated that the corporate defendant's failure to state a legal or factual basis for its counterclaims "leaves no doubt that the counterclaims are frivolous and unworthy." *Id.*; *see also Salazar*, 796 F. Supp. 2d at 385 (inferring a causal connection where "in addition to his termination eight months after he filed the [i]nitial [c]omplaint, . . . the [d]efendants commenced the allegedly frivolous [litigation]").

Plaintiff commenced this action on August 17, 2019, and Miss Laser filed the State Court Action over a year later on August 24, 2020. (Compl.; Pl.'s Mem. 4; Defs.' Opp'n 1). The lapse of time, over a year, between this action and the State Court Action is well beyond the outer bounds that courts have recognized as sufficient to draw a causal inference. *See Shaw v. McDonald*, 715 F. App'x 60, 62 (2d Cir. 2018) (noting a twelve-month gap and declining to find causation); *Williams v. N.Y.C. Dep't of Correction*, No. 19-CV-5200, 2020 WL 509180, at *5 (S.D.N.Y. Jan. 30, 2020) ("One year is far beyond what courts in this circuit have determined as temporally close." (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001))); *Ingram v. Nassau Health Care Corp.*, No. 17-CV-5556, 2019 WL 1332857, at *7 (E.D.N.Y. Mar. 25, 2019) (finding a lack of temporal proximity where the plaintiff was terminated one year after filing the complaint).

However, although Defendants filed the State Court Action over a year after Plaintiff filed the Amended Complaint, the Court finds that Defendant's action of filing the State Court Action three days after Plaintiff filed her motion for collective class certification suggests a retaliatory motive. (Pl.'s Mot. for Collective Class Certification; Pl.'s Mem. 4; Defs.' Opp'n 1.) Similar to *Torres* where the corporate defendant only alleged counterclaims after claims were brought against the individual defendants, *Torres*, 628 F. Supp. 2d at 473, Miss Laser only filed

15

the State Court Action after the "parties engaged in some discovery, and efforts at early settlement were unsuccessful" and Plaintiff subsequently filed her motion for collective class certification, (*see* Pl.'s Mem. 4; Compl. 18). In addition, Plaintiff alleges other actions between the commencement of the instant action and the State Court Action that suggest a retaliatory motive, including her refusal to settle and Defendants' statement that "Plaintiff should either settle her claim and move on or be compelled to oppose" the State Court Action "should [the instant] case proceed." (Pl.'s Reply 5; Letter dated Aug. 21, 2020, at 5, Docket Entry No. 29.) Plaintiff's assertion that Miss Laser would not have sued Plaintiff in state court had Plaintiff settled and abandoned the instant action against Defendants, (Pl.'s Reply 5), also supports a causal link. *See Rodriguez*, 2020 WL 3051559, at *2 (finding causation where a member of the defendants' organization commenced a state court action "only after" the plaintiff refused a settlement offer" and concluding that the state court action shows retaliatory animus); *Nunez*, 2019 WL 5457731, at *1–2 (concluding that the "plaintiff alleged retaliatory intent sufficient to survive a motion to dismiss, even if temporal proximity is on the edge of attenuation" where "the plaintiff alleged that the defendants filed the state lawsuit two days after settlement discussions fell apart . . . , despite being aware of the harassment allegations against the plaintiff" earlier).

      For the reasons stated above, the Court finds that Plaintiff has alleged a causal connection between the instant action and the State Court Action.

      Because Plaintiff has alleged that she engaged in protected activity, that she suffered an adverse action, and that a causal connection exists between her protected activity and the adverse action, the Court finds that Plaintiff has established a *prima facie* case of FLSA and NYLL retaliation.

### c. A potentially favorable outcome in the State Court Action does not render Plaintiff's retaliation claims futile

Plaintiff argues that Defendants' faithless servant claim in the State Court Action is baseless and that even if it was meritorious, it "would not bar Plaintiff from all recovery in this matter and thus render [an amended] complaint futile." (Pl.'s Reply 5.) In support, Plaintiff asserts that *Calderon v. Mullarkey Realty, LLC*, stands for the proposition that "while compensatory damages for unpaid wages are foreclosed by a faithless servant claim, . . . liquidated damages and prejudgment interest are not[] because they are not claims for wages." (*Id.* (quoting *Calderon*, 2018 WL 2871834, at *1).)

Defendants argue that Plaintiff's motion to amend the Complaint should be dismissed "since a violation of the faithless servant doctrine will bar her recovery under the FLSA and the NYLL should [they] prevail" and "any verdict determining that Plaintiff was a 'faithless servant' will require her to disgorge any compensation she was paid or would otherwise be entitled to (*i.e.*, the alleged unpaid wages she seeks in this case)." (Defs.' Opp'n 8.) Defendants further assert that "New York courts routinely grant such relief to employers against disloyal employees such as . . . Plaintiff." (*Id.*)

Under the faithless servant doctrine, "[a]n agent is obligated 'to be loyal to his employer and is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties.'" *Carco Grp., Inc. v. Maconachy*, 383 F. App'x 73, 76 (2d Cir. 2010) (quoting *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 200 (2d Cir. 2003)). "When a defendant is found liable under the faithless servant doctrine, a plaintiff is entitled to recover some amount of that defendant's compensation." *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 237 (2d Cir. 2020); *see also Rubio v. BSDB Mgmt. Inc.*, No. 19-CV-11880, 2021 WL 102651, at *3 (S.D.N.Y. Jan.

17

12, 2021) ("One who owes a duty of fidelity to a principal and who is faithless in the performance of his services is generally disentitled to recover his compensation, whether commissions or salary." (quoting *Phansalkar*, 344 F.3d at 200)); *Ciulla v. Xerox Corp.*, 136 N.Y.S.3d 696, 696 (Sup. Ct. 2021) (stating that an employee who is liable under the faithless servant doctrine is not entitled to recovery of salary or commission). "[E]ven if [a faithless servant] claim is not an 'affirmative defense' in the sense that it is an independent bar to plaintiff's recovery . . . it does give rise to a partial defense on a theory of recoupment or setoff." *Rubio*, 2021 WL 102651, at *3 (first and third alterations in original) (quoting *Markbreiter v. Barry L. Feinberg, M.D., P.C.*, No. 09-CV-5573, 2010 WL 334887, at *2 (S.D.N.Y. Jan. 29, 2010)). However, a "state court jury's faithless servant finding . . . does not bar . . . claims for liquidated damages and prejudgment interest under the FLSA and NYLL" because awarding these damages do not "undermine the goal of making [an employer] whole for [an agent's] breach of the employment relationship." *Calderon*, 2018 WL 2871834, at *10.

As an initial matter, although the faithless servant doctrine is a partial defense to recovery, Miss Laser is yet to succeed in the State Court Action and the possibility that it *may* do so is an insufficient basis for the Court to decline to hear Plaintiff's FLSA and NYLL retaliation claims. *See Henry v. Concord Limousine, Inc.*, No. 13-CV-494, 2014 WL 297303, at *6 (E.D.N.Y. Jan. 24, 2014) (allowing FLSA claim and faithless servant partial defense to proceed). Indeed, Miss Laser may lose in state court. *See Rubio*, 2021 WL 102651, at *5 (declining to grant leave to add a faithless servant counterclaim in a FLSA action where the counterclaim would have been futile); *Miller v. Levi & Korsinsky, LLP*, No. 20-CV-1390, 2021 WL 535599, at *6 (S.D.N.Y. Feb. 12, 2021) (dismissing claim under the faithless servant doctrine where "the two instances of misconduct that [the defendant] allege[d] [were] not severe enough to warrant

18

relief"). In addition, while Miss Laser's success in the State Court Action would preclude Plaintiff's recovery of compensatory damages, Plaintiff may be entitled to punitive damages should she prevail on the FLSA and NYLL claims. *See Calderon*, 2018 WL 2871834, at *10.

Accordingly, the Court finds that Miss Laser's potential success in the State Court Action does not bar Plaintiff's FLSA and NYLL retaliation claims.

### III. Conclusion

For the foregoing reasons, the Court grants Plaintiff's motion to amend the Complaint.

Dated: March 16, 2021
      Brooklyn, New York

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge