# MILMAN LABUDA LAW GROUP PLLC
**3000 MARCUS AVENUE**
**SUITE 3W8**
**LAKE SUCCESS, NY 11042**
_____

**TELEPHONE (516) 328-8899**
**FACSIMILE (516) 328-0082**

July 13, 2022

**VIA ECF**
United States District Court
Eastern District of New York
<u>Attn</u>: Hon. Marcia M. Henry, U.S.M.J.
225 Cadman Plaza East
Courtroom 504 North
Brooklyn, NY 11201-1804

      *Re*:   **Soto v. Miss Laser Inc.,** *et al.*
            **Case No.: 1:19-cv-4745 (HG) (MMH)**
            <u>**MLLG File No.: 159-2019**</u>

Dear Judge Henry:

      This office represents Defendants in the above-referenced case. Defendants write to respectfully request that this Court compel the in-person appearance of Plaintiff and her counsel at a mediation scheduled for Tuesday, August 9, 2022. Plaintiff has requested a conference to discuss this application and Defendants do not oppose this request.

**<u>Relevant Facts & Procedural History</u>**

      On August 17, 2019, Plaintiff Michelle Caicedo Soto (hereinafter "Plaintiff" or "Soto") filed her complaint alleging causes of action under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") for alleged unpaid wages, overtime, spread of hours compensation, failure to provide meal periods, and various recordkeeping violations. The only causes of action giving rise to this Court's subject matter jurisdiction under 28 U.S.C. § 1331 are Plaintiff's first and third causes of action for alleged minimum wage and overtime violations, and Defendants have moved to dismiss the FLSA claims for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

      On or about August 27, 2019, Plaintiff submitted damages calculations purporting to total $178,417.81. The calculations were of a spreadsheet which was submitted in PDF format. When Defendants requested a copy of the calculations in Excel format to review the mathematical correctness of same, Plaintiff refused. Over the course of months, including letter motion practice over whether Plaintiff must provide their damage calculations in Excel format (which was denied on procedural grounds), Defendants sought to make sense of Plaintiff's calculations and could not do so. Defendants were, however, able to show mathematical inconsistencies in Plaintiff's spreadsheet.

      Thus, on or about April 14, 2020, Plaintiff submitted revised damages calculations totaling $68,990.63, representing a difference of nearly $110,000.00.

Defendants challenged these calculations, as well, and demanded that Plaintiff provide the Excel spreadsheet so that Defendants can see how Plaintiff is calculating these damages. Defendants also found further inconsistences. This led to Plaintiff yet again revising its damages calculations.

On or about May 5, 2020, Plaintiff submitted further revised damages calculations totaling $39,273.32, nearly half of the earlier revised calculations. While these calculations were submitted in Excel format, Plaintiff removed all of the formulas and provided the spreadsheet with hardcoded numbers. Plaintiff did this as if there is some proprietary methodology to the math in figuring out overtime damages. Plaintiff's antics concerning the spreadsheets unnecessarily delayed this litigation and frustrated a resolution. Plaintiff did so despite being Ordered by the Hon. Cheryl M. Pollak, U.S.M.J. ("Judge Pollak") to provide the calculations in Excel format. See Text Only Minute Entry and Order dated April 16, 2020 ("Plaintiff is to recalculate damages based on certain assumptions and provide the spreadsheets in excel format to defendant in furtherance of the settlement").

Defendants were able to avoid motion practice on this point by having Plaintiff provide the formulas they used verbatim such that Defendants had to physically replace the hardcoded numbers with the formulas in order to understand Plaintiff's math. Again, Plaintiff's conduct was unnecessary, done in bad faith, designed to frustrate and obfuscate, and it is worthy to note once more that their damage calculations which initially totaled $178,000.00 were deflated by Defendants' challenges to Plaintiff's math (not facts such as hours worked, time period employed, wage rates, etc.) to $37,273.32, a number that is a fifth of the original demand.

In any event, breaking down the $37,273.32 yields the following: (i) $12,653.17 in base alleged wage underpayment; (ii) $12,653.17 in liquidated damages; (iii) $10,000.00 in "notice" violations pursuant to NYLL § 195; and (iv) $3,966.98 in interest. This number is also incredibly inflated. Here is why.

There are only three (3) periods of time in between Plaintiff's period of employment from on or about November 13, 2016 through on or about June 14, 2019, a period of approximately 139 weeks, in which the Defendants do not have time records for Plaintiff's weekly hours worked. Those time periods are: (i) September 3, 2017 through December 9, 2017, totaling fourteen (14) weeks; (ii) January 20, 2018 through March 9, 2018, totaling seven (7) weeks; and (iii) April 14, 2018 through May 18, 20-18, totaling five (5) weeks.

Therefore, out of 139 weeks, there are only twenty-six (26) weeks in which there are no time records for Plaintiff. For these twenty-six (26) weeks, Plaintiff submits that her total hours worked for each of those weeks was 59.38 hours, and her base alleged wage underpayment damages total $5,615.00.[1]

---

[1] For some inexplicable reason, Plaintiff's daily damages total $116.30 per day during the first period, $348.90 per day during the second, and $308.90 per day during the third. Plaintiff's numbers simply make no sense.

2

However, if you average the number of hours Plaintiff worked on a weekly basis for the 113 weeks Defendants do have records for, Plaintiff only worked an average of 39.43 hours per week. As such, Plaintiff did not even regularly work overtime, and more importantly, when applying that average 39.43 hours per week to those twenty-six (26) overinflated weeks, the total damages decrease[2] to $3,584.31 in base wage underpayment, plus $3,584.31 in liquidated damages.

Against this backdrop, Defendants initially offered Plaintiff $14,000.00 in settlement – a number far above her actual damages, and have agreed to resolve the attorneys' fees owed to her counsel through motion practice. However, Plaintiff has refused. What's worse, Plaintiff ignored Judge Pollak's Order to notify the Court as to their settlement position given Defendants' beyond reasonable offer. See Text Only Order dated June 18, 2020 ("Plaintiff's counsel to notify court by 6/19/2020 as to settlement position").

Instead, Plaintiff plows on with unnecessary litigation in an attempt to conditionally certify a collective action it has no basis for. Indeed, Plaintiff is not similarly situated to other employees because she was a faithless servant who stole Defendants' customers and performed services for Defendants' customers privately in her home. Because Plaintiff violated her duty of loyalty[3] towards Defendants, not only will her motion to conditionally certify a collective action be denied, she will be disgorged of all wages paid to her from the first date of her disloyalty.[4] See Duane Jones Co. v. Burke, 306 N.Y. 172 (1954); see also Lamdin v. Broadway Surface Advertising Corp., 272 N.Y. 133 (1936); Luskin v. Seoane, 226 A.D.2d 1144 (4th Dept. 1996).

Plaintiff does so despite the fact that Defendants generously increased their offer to $24,000.00 in an effort to settle this case in December 2021 so long as the case settled by year's end. That did not happen, and as such, that offer was withdrawn. Plaintiff has baselessly refused to agree to any settlement at all without countering or otherwise responding in good faith.

---

[2] Defendants do not concede any of these numbers are accurate, but are working with them for settlement purposes with Plaintiff to reach some logical basis upon which the parties can settle.

[3] Pursuant to this duty, the employee is prohibited from acting in any manner inconsistent with his or her agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his or her duties. See Qosina Corp. v C & N Packaging, Inc., 96 A.D.3d 1032 (2d Dept. 2012) (citing PJI 3:59); see also Mega Group Inc. v. Halton, 290 A.D.2d 673 (3d Dept. 2002); CBS Corp. v. Dumsday, 268 A.D.2d 350 (1st Dept. 2000). "An employee owes his or her employer 'undivided and unqualified loyalty and may not act in any manner contrary to the interests of the employer'" See Qosina Corp., 96 A.D.3d 1032 (citing Restatement [Third] of Agency §§ 8.01, 8.03).

[4] New York's strict application of the faithless servant doctrine "mandates the forfeiture of all compensation […] where […] one who owes a duty of fidelity to a principal is faithless in the performance of his services." See Art Capital Group, LLC v. Rose, 2017 N.Y. App. Div. LEXIS 2670 (1st Dept. 2017) (citations omitted); see also Phansalkar v. Andersen Weinroth & Co., L.P., 344 F.3d 184, 200, 203 (2d Cir. 2003) (requiring disgorgement of over $4 million dollars in compensation for violation of the faithless servant doctrine).

3

Now, the only reason we are going to mediation is because this case was reassigned to the Hon. Hector Gonzalez, U.S.D.J. ("Judge Gonzalez") and had ordered the parties to do so.  See Text Only Orders dated May 24, 2022 and June 11, 2022.

Plaintiff proposed five (5) mediators on June 13, 2022 at Defendants' invitation on the same day.  On June 30, 2022, Defendants agreed to one of the mediators proposed by Plaintiff. The following day – July 1, 2022 – Plaintiff wrote to Mediator John Berenbaum to schedule a mediation and the parties agreed to conduct same on August 9, 2022 on July 9, 2022.

On the same day, Defendants indicated that they wish to conduct the mediation in-person. Plaintiff's counsel responded half-an-hour later to state that they would prefer a remote mediation without explaining why and without any indication that they spoke with their client.  After conferring with your undersigned's clients and explaining that your undersigned is amenable to conducting the mediation virtually, Defendants insisted on doing so in-person.  As a result, Mediator Berenbaum asked today whether Plaintiff is willing to conduct the mediation in-person at his office, located at 80 Pine Street, New York, NY 10005-1701.  Plaintiff responded that she objected because her and her counsel "do not feel comfortable at this juncture to hold the mediation in person" and that they "prefer remote mediation," without explaining why.

In further correspondence, Plaintiff stated that "an in person mediation will just use up everyone's time and resources for now we need to pick a place to perform the mediation and the parties now travel to that place expending time and expenses on traveling when this could all be done on a computer."  As set forth below, Defendants are not confident that a remote mediation would be acceptable because Plaintiff's – rather, her counsel's – lack of willingness to travel indicates a lack of interest in actually settling this case.

**Plaintiff and Her Counsel Should Appear at the Mediation in Person**

"Federal courts possess certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." See Goodyear Tire & Rubber Co. v. Haeger, 137 S. Ct. 1178, 1186 (2017) (citation omitted).  An opportunity to meet with the other side in person is often perceived as the best opportunity to reach agreement. See Attorney's Practice Guide to Negotiations § 6:5. The mere fact that both parties consider the subject of negotiation to be important enough to justify the time or cost of traveling is thus often indicative of potential.  Id.  Salesmen repeatedly reassure each other that all you have to do is get your foot in the door to strike a deal and the most earnest of suitors will often suggest that their intended just agree to go out with them once—just once. Id.

Indeed, most judges reiterate the importance of face-to-face meetings whenever the subject of mediation arises. See, e.g., G. Heileman Brewing Co. v. Joseph Oat Corp., 107 F.R.D. 275 (W.D. Wis. 1985) (order rev'd on other grounds) ("It is a misuse of those resources for any party to refuse even to meet personally with the opposing party or its counsel to attempt to resolve their disputes prior to trial.  It is always possible that exposure of the decision-makers to the realities of a case will bring about a reevaluation of settlement posture on the part of those persons. Thus it is appropriate for a judicial officer to require that … the decision-makers be … personally present before the court").

4

      Plaintiff's counsel has altogether failed to provide any compelling reason to conduct the mediation remotely, and – tellingly – there has been zero indication that Plaintiff's counsel actually discussed this issue with the Plaintiff herself.  Defendants respectfully submit that, because Plaintiff has engaged in regressive bargaining, bad faith negotiations, and otherwise acted in a manner contrary to focusing on settlement, ostensibly to pad this case for the purpose of an anticipated application for attorneys' fees, an in-person mediation is not only necessary, it is unquestionably essential to determine whether the Plaintiff is actually interested in settling.

      Based on the foregoing, an Order should issue compelling Plaintiff and her counsel to appear in person at the August 9, 2022 mediation.  Defendants are amenable to any location Plaintiff desires that is mutually agreeable to Mediator Berenbaum.  It is also worthy to note that this letter motion was shared with Plaintiff prior to its filing to give Plaintiff an opportunity to consent and avoid unnecessary motion practice.

      Defendants thank this honorable Court for its time and attention to this case.

Dated: Lake Success, New York
       July 13, 2022

                                      Respectfully submitted,

                                      **MILMAN LABUDA LAW GROUP PLLC**

                                      _____/s_____
                                      Emanuel Kataev, Esq.
                                      3000 Marcus Avenue, Suite 3W8
                                      Lake Success, NY 11042-1073
                                      (516) 328-8899 (office)
                                      (516) 303-1395 (direct dial)
                                      (516) 328-0082 (facsimile)
                                      emanuel@mllaborlaw.com

                                      *Attorneys for Defendants*

**VIA ECF**
Troy Law, PLLC
<u>Attn</u>: John Troy, Esq.
4125 Kissena Boulevard, Suite 103
Flushing, NY 11355-3101
johntroy@troypllc.com

*Attorneys for Plaintiff*

5